IN THE UNITED DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
(FORT PIERCE DIVISION)

Case No. 2:15-CV-14333

UNIVERSAL PROPERTY & CASUALTY
INSURANCE COMPANY A/S/O TRACIE
HARRIS and WILLIAM HARRIS

        Plaintiff,

v.

LIFETIME BRANDS, INC. and WM BARR
COMPANY

        Defendant.

_____/

## PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, Plaintiff, UNIVERSAL PROPERTY & CASUALTY INSURANCE

COMPANY A/S/O TRACIE HARRIS and WILLIAM HARRIS (hereinafter "Universal"), by

and through its undersigned counsel and pursuant to the Federal Rules of Civil Procedure, and

hereby files its Amended Complaint against the Defendants, LIFETIME BRANDS, INC., and

W.M. BARR & COMPANY, INC., and in support thereof states as follows:

1.      This is an action which seeks damages in excess of $75,000 and is within the

jurisdiction of this court.[1]

2.      On November 17, 2012, Ms. Tracie Harris was a social guest on the property of

Mr. Jeffrey Wik and Ms. Allison Wik, in Fort Pierce, Florida, St. Lucie County, when Ms. Harris

was injured by a fireball, flames, and fire emanating from a LIFETIME BRANDS, INC. fondue

after the fondue was lit by Mr. Wik.

---

[1] This action was originally brought in the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie
County, Florida. Jurisdiction was subsequently removed to the United States District Court for the Southern District
of Florida, Fort Pierce Division, pursuant to 28 U.S.C. §§ 1441 and 1446.

3.      The subject fondue was improperly manufactured and/or designed.

4.      The improper manufacture and/or design caused the subject fondue to produce high flames beyond the intended-cooking surface of the fondue pot and issue a fireball.

5.      The use of denatured alcohol itself by the subject fondue was unreasonably dangerous.

6.      The fireball, flames, and fire emanating from the LIFETIME BRANDS, INC. Faberware brand fondue severely burned Ms. Harris, causing second and third degree burns.

7.      The LIFETIME BRANDS, INC. Faberware fondue was lit by denatured alcohol made by WM BARR COMPANY and sold in a WM BARR COMPANY container.

8.      The WM BARR COMPANY container failed to contain a sufficient warning.

9.      The WM BARR COMPANY warning was too small, not well-placed in relation to a consumer's point of view, and did not sufficiently focus on the flammable and explosive nature of the WM BARR COMPANY product.

10.      UNIVERSAL insured Mr. Wik and Ms. Wik. A copy of the subject insurance Policy between UNIVERSAL and Mr. Wik and Ms. Wik is attached hereto as Exhibit "A."

11.      Following the November 17, 2012 incident, Mr. Wik and Ms. Wik filed a claim against UNIVERSAL for insurance benefits under the subject Policy.

12.   In settlement of Ms. Harris' and Mr. Harris' claim against UNIVERSAL, UNIVERSAL paid $303,000.00 to Ms. Harris and Mr. Harris as part of a total settlement in the amount of $1,303,000.00[2].

13.   Pursuant to the above referenced $303,000.00 settlement, UNIVERSAL obtained primary subrogation rights to pursue the actual tortfeasors responsible for the subject fire incident which injured Ms. Harris, i.e. LIFETIME BRANDS, INC. and WM BARR COMPANY, through both contractual/conventional subrogation and equitable subrogation. A copy of the settlement agreement, as embodied by the release executed by Mr. and Ms. Harris, is attached hereto as Exhibit "B."

14.   UNIVERSAL obtained contractual subrogation rights by means of the settlement agreement, as embodied by the Release executed by Mr. and Ms. Harris. *See* Exhibit "B."

15.   Within the executed settlement agreement, Tracie Harris and William Harris acknowledged the subrogation agreement between the subrogors (i.e., Tracie Harris and William Harris) and UNIVERSAL, whereby UNIVERSAL is substituted as subrogee up to the amount it paid (i.e., $303,000.00) in settlement of the claims filed by Tracie Harris and William Harris against Universal's insureds, Jeffery Wik and Allison Wik. *See* Exhibit "B."

16.   The settlement agreement is a contract, and same contract subrogates UNIVERSAL up to the amount of $303,000.00. A copy of the Release is attached hereto as Exhibit "B."

17.   This contract establishes an agreement that UNIVERSAL will have the rights and remedies of Tracie Harris and William Harris against the parties that caused the subject

---

[2] The Release only references $1,300,000.00, as Universal paid $3,000.00 under the subject Policy's medical payments provision prior to the Release.

incident[3], including the Defendants, LIFETIME BRANDS, INC., and W.M. BARR & COMPANY, INC., as UNIVERSAL paid the debts that these parties owed to Tracie Harris and William Harris due to the negligence of the Defendants, LIFETIME BRANDS, INC., and W.M. BARR & COMPANY, INC.

18.     Accordingly, the settlement agreement contractually subrogates UNIVERSAL, so that UNIVERSAL possesses the rights and remedies of Tracie Harris and William Harris.

19.     UNIVERSAL is also equitably subrogated to the amount of $303,000.00, in the subject action.

20.     UNIVERSAL made the aforementioned $303,000.00 payment to Trace Harris and William Harris, in order to protect its own interests, as UNIVERSAL was obligated to settle claims on behalf of its insureds—here, Jeffrey Wik and Allison Wik—when it is required to do so under the relevant circumstances, or face bad faith exposure under Florida law.

21.     Given the very significant injuries incurred and relevant circumstances of the claim, UNIVERSAL made the aforementioned $303,000.00 payment to protect both the interests of its insureds and its own interests.

22.     UNIVERSAL did not make the aforementioned $303,000.00 payment as a volunteer, as it was obligated under Florida law to make claims payments on behalf of its insureds, Jeffrey Wik and Allison Wik, when the relevant circumstances indicate that payment is appropriate. *See* Exhibit "A."

---

[3] The Release releases "Jeffrey P. Wik, Allison B. Wik, Universal Property & Casualty Insurance Company, State Farm Insurance Company, the Insureds of Universal Property & Casualty Insurance Company and State Farm Insurance Company, Faberware, and Lifetime Hoan Corporation and any other person or entity involved in the sale or manufacture of the fondue pot and burner that caused the injuries in this case…" This Release language covers both Lifetime Brands, as the manufacturer, and WM Barr, as the manufacturer of the denatured alcohol, which was a component part of the Faberware fondue.

23.     The subject Policy and Florida bad faith law obligated UNIVERSAL to make the aforementioned $303,000.00 payment to Tracie Harris and William Harris.

24.     Accordingly, UNIVERSAL did not make the aforementioned $303,000.00 payment to Tracie Harris and William Harris as a volunteer.

25.     UNIVERSAL was not primarily liable for the debt (i.e., the $303,000.00 payment), because same was caused by the Defendants, LIFETIME BRANDS, INC., and W.M. BARR & COMPANY, INC.

26.     UNIVERSAL paid the debts of the Defendants, LIFETIME BRANDS, INC., and W.M. BARR & COMPANY, INC., due to its insurance policy with Jeffery Wik and Allison Wik.

27.     Accordingly, UNIVERSAL did not possess primary liability for the debt (i.e., the $303,000.00 payment).

28.     UNIVERSAL paid off the entire debt (i.e., the $303,000.00 payment), as evidenced by the Release, in which Tracie Harris and William Harris released the parties that caused the subject accident. *Id.*

29.     UNIVERSAL investigated and adjusted the subject fire loss, and determined that $303,000.00 was the appropriate value of the subject fire loss.

30.     UNIVERSAL issued payment to Tracie Harris and William Harris in the amount of $303,000.00, in full satisfaction of the subject accident. *Id.*

31.     Accordingly, UNIVERSAL paid off the entire debt (i.e., the $303,000.00 payment).

32.     Subrogation would not work any injustice to the rights of a third-party, including the Defendants, LIFETIME BRANDS, INC., and W.M. BARR & COMPANY, INC., as Universal already obtained a Release from Tracie Harris and William Harris in their favor and paid the underlying claim due to their negligence. *Id.*

33.     Because the subject debt (i.e., the $303,000.00 payment) was caused by the Defendants, LIFETIME BRANDS, INC., and W.M. BARR & COMPANY, INC., it is fair and equitable for UNIVERSAL to subrogate the interests of its insureds, Trace Harris and William Harris in this matter.

34.     Accordingly, Universal is subrogated in this matter in the amount of its payment and stands in the shoes of the Tracie Harris and William Harris, whose claims have been discharged by Universal's payment, and Universal thus succeeds to the right and priorities of the Tracie Harris and William Harris.

35.     Universal has its principal place of business in Florida and is a citizen of Florida.

36.     Lifetime Brands has its principal place of business in New York and is a citizen of New York.

37.     WM Barr has its principal place of business in Tennessee and is a citizen of Tennessee.

38.     Jurisdiction is proper under 28 U.S.C. §1332.

39.     The incident giving rise to this action occurred in Fort Pierce, Florida, St. Lucie County.

40.     Venue is proper under 28 U.S.C. §1391.

## COUNT I- STRICT PRODUCTS LIABILITY AGAINST LIFETIME BRANDS, INC.

The allegations of paragraphs 1-39 are fully incorporated into this count, as if fully reproduced herein.

41.     LIFETIME BRANDS, INC., placed the subject fondue into the stream of commerce in a defective condition.

42.     LIFETIME BRANDS, INC. manufactured and/or designed the subject fondue in a defective condition.

43.     At all times material, Defendant LIFETIME BRANDS, INC., knew and intended that its products would be purchased by members of the public at large without further inspection for defects.

44.     Defendant LIFETIME BRANDS, INC., manufactured, supplied, or distributed the fondue, which created an unreasonable risk to Ms. Harris. Defendant LIFETIME BRANDS, INC. is therefore strictly liable for the damages sustained by Ms. Harris/UNIVERSAL.

45.     Mr. and Ms. Harris, acting as reasonably prudent individuals, could not have discovered that there was something defective about the subject fondue.

46.     The defects of the subject fondue were not apparent by reasonable inspection at the time of purchase. The defects thereafter manifested.

47.     LIFETIME BRANDS, INC.'s placing of the subject defective fondue into the stream of commerce actually and proximately caused the injuries of the Ms. Harris.

48.    Ms. Harris and Mr. Harris suffered severe injuries due to LIFETIME BRANDS, INC.'s placing a defective fondue into the stream of commerce, which in turn caused UNIVERSAL to pay $303,000.00 to Ms. Harris and Mr. Harris.

49.    Ms. Harris suffered severe burns, disfigurement, medical injuries, pain, suffering, financial damages, medical bills, loss of enjoyment of life, and the need for medical care (including past, present, and potentially future medical care).

50.    Ms. Harris' severe injuries in turn caused her husband significant damages, including loss of consortium, loss of comfort, financial damages, loss of enjoyment of life, and the need to care for his wife as she recuperated from her severe injuries.

WHEREFORE, Plaintiff, UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY a/s/o TRACIE HARRIS demands judgment against defendant LIFETIME BRANDS, INC. for compensatory damages together with the costs and disbursements of this action and such other and further relief as this Court may deem just and proper.

## COUNT II- STRICT PRODUCTS LIABILITY AGAINST WM BARR COMPANY

The allegations of paragraphs 1-39 are fully incorporated into this count, as if fully reproduced herein.

51.    WM BARR manufactured, designed, distributed, and/or otherwise placed in the stream of commerce the subject denatured alcohol and denatured alcohol container used in the subject accident that injured Tracie Harris.

52.    The subject denatured container contained an insufficient warning that was too small, too unclear, and not directed towards the consumer's point of reference.

53.     This failure to warn led Mr. Wik to fully appreciate the dangerous nature of the denatured alcohol.

54.     At all times material, Defendant WM BARR COMPANY knew and intended that its products would be purchased by members of the public at large without further inspection for defects.

55.     WM BARR knew or should have known of the specific fire risk posed by the subject denatured alcohol in light of the generally recognized and prevailing best scientific knowledge available at the time of manufacture and distribution concerning the design and manufacture of the denatured alcohol and denatured alcohol container and the quality and safety testing performed by WM BARR COMPANY, but failed to adequately warn Mr. Jeffrey Wik and Ms. Allison Wik of the risk.

56.     As a direct and proximate risk of WM BARR COMPANY's failure to warn end users and entities down the stream of commerce, including Mr. Jeffrey Wik and Ms. Allison Wik, Ms. Tracie Harris/William Harris/UNIVERSAL suffered injuries.

57.     Ms. Harris suffered severe burns, disfigurement, pain, suffering, financial damages, medical bills, medical injuries, loss of enjoyment of life, and the need for medical care (including past, present, and potentially future medical care).

58.     Ms. Harris' severe injuries in turn caused her husband significant damages, including loss of consortium, loss of comfort, financial damages, loss of enjoyment of life, and the need to care for his wife as she recuperated from her severe injuries.

WHEREFORE, Plaintiff, UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY a/s/o TRACIE HARRIS demands judgment against defendant WM BARR

COMPANY for compensatory damages together with the costs and disbursements of this action and such other and further relief as this Court may deem just and proper.

UNIVERSAL PROPERTY & CASUALY INSURANCE COMPANY a/s/o Tracie Harris and William Harris requests a trial by jury of all triable issues.

WHEREFORE, Plaintiff demands judgment against defendants for compensatory damages together with the costs and disbursements of this action and such other and further relief as this Court may deem just and proper.

Case No. 2:15-CV-14333

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing has been electronically transmitted to: Brian P. Henry, Esquire, Smith, Rolfes, & Skavdahl, Co., L.P.A., 1605 Main Street, Suite 1106, Sarasota, FL 34236; Michael S. Cooley, Esquire, Barr Brands International, Inc., 6750 Lenox Center Court Suite 200, Memphis, TN 38115; bhenry@smithrolfes.com; Mike_Cooley@wmbarr.com this 23rd day of December, 2015.

WALTON LANTAFF SCHROEDER & CARSON LLP
Attorneys for Plaintiff
9350 Financial Centre, 10th Floor
9350 S. Dixie Highway
Miami, FL 33156
Tel:   (305) 671-1300
Fax:   (305) 670-7065

By: _____
Ian S. Ronderos, Esquire
Florida Bar No.: 0070462

| Universal Property and Casualty Insurance Company | Homeowners |
|---|---|
| c/o Universal Risk Advisors<br>1110 W. Commercial Blvd Suite 300<br>Fort Lauderdale, FL 33309<br>Toll Free: 800-425-9113 | Declaration Effective<br>06/15/2012  |



UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY

Renewal Policy

| Claims: 800-218-3206 | Service: Contact your Agent Listed Below | |
|---|---|---|
| **Policy Number** | FROM   Policy Period   TO | [INSURED BILLED] | **Agent Code** |
| 592-121-639 | 06/15/2012          06/15/2013 | 12:01 AM Standard Time | 9L37 |

**Named Insured and Address**
Jeffrey P. and Allison B. Wik
4310 N A1a Apt 1201
Fort Pierce, FL 34949-8377
(716) 983-0587

I certify that this is a true and attested copy of policy 592-121-639 for the period of 6/15/2012 through 6/15/2013.

_William P. Type_
Authorized Certification Officer
Universal Property & Casualty Ins. Co.

**Agent Name and Address**
Tom Collins Insurance Agency
1555 Indian River Blvd #130
Vero Beach, FL 32960
(772) 778-9222

### Premium Summary

| Basic Coverages<br>Premium | Attached Endorsements<br>Premium | Assessments / Surcharges | MGA Fees/Policy Fees | Total Policy Premium<br>(Including Assessments & Surcharges) |
|---|---|---|---|---|
| $3,804.00 | ($1,081.00) | $0.00 | $89.63 | $2,812.63 |

### Location 001

| Form | Construction | Year | Townhouse/<br>Rowhouse | Number of<br>Families | Occupied | Protection<br>Class | Territory | BCEG |
|---|---|---|---|---|---|---|---|---|
| HO6 | Superior - Fire Resistive | 2004 | N | 5 | Y | 4 | 183 | 4 |

| County | Dwelling<br>Replacement Cost | Home Updated | Protective Device Credits: | | | | Wind / Hail<br>Exclusion |
|---|---|---|---|---|---|---|---|
| | | | Burglar | Fire | Sprinkler | Shutter | |
| Saint Lucie | Y | Y | None | Central | Y | N | N |

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this policy will expire.

Insurance is provided only with respect to the following coverages for which a limit of liability is specified, subject to all the conditions of this policy.

| COVERAGES - SECTION I | LIMITS | PREMIUMS | COVERAGES - SECTION II | LIMITS | PREMIUMS |
|---|---|---|---|---|---|
| Coverage -A- Dwelling | $250,000 | | Coverage -E- Personal Liability | $300,000 | $18.00 |
| Coverage -B- Other Structure | $0 | | Coverage -F- Medical Payments | $3,000 | $5.00 |
| Coverage -C- Personal Property | $150,000 | $3,804.00 | | | |
| Coverage -D- Loss of Use | $60,000 | | | | |

NOTE:   The portion of your premium for hurricane coverage is: $844.69
The portion of your premium for all other coverages is: $1,967.94

**Section 1 coverages subject to a minimum 2.0% - $3,000 hurricane deductible per calendar year.**

Section 1 coverages subject to $1,000 non-hurricane deductible per loss.

DESCRIBED LOCATION - The Described Location covered by this policy is at the above address unless otherwise stated:
4310 North A1a #1201 Fort Pierce, FL 34949

# THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

Flood coverage is not provided by Universal Property and Casualty Insurance Company and is not part of this policy.

| Countersignature | Date | Chief Executive Officer |
|---|---|---|

EXHIBIT
B

| Universal Property and Casualty Insurance Company | | |
|---|---|---|
| c/o Universal Risk Advisors<br>1110 W. Commercial Blvd Suite 300<br>Fort Lauderdale, FL 33309<br>Toll Free: 800-425-9113 | **Declaration Effective**<br>06/15/2012<br><br>Renewal Policy | <br>UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY |

| Claims: 800-218-3206 | | Service: Contact your Agent Listed Below | |
|---|---|---|---|
| Policy Number | FROM    Policy Period    TO | [INSURED BILLED] | Agent Code |
| 592-121-639 | 06/15/2012            06/15/2013 | 12:01 AM Standard Time | 9L37 |

Mortgagee / Additional Interest 01

**Agent Name and Address**
Tom Collins Insurance Agency
1555 Indian River Blvd #130
Vero Beach, FL 32960
(772) 778-9222

**Additional Interest**

| Mortgagee/Additional Interest 01 | Mortgagee/Additional Interest 02 | Mortgagee/Additional Interest 03 |
|---|---|---|

### Policy Forms and Endorsements Applicable to this Policy

| NUMBER EDITION | DESCRIPTION | LIMITS | PREMIUMS |
|---|---|---|---|
| HO 00 06 04 91 | Homeowners 6 Unit Owners Form | | $3,804.00 |
| UPCIC 06 03 32 08 | Limited Fungi, Wet or Dry Rot, or Bacteria Section I - $10,000/$20,000;<br>Section II - $50,000 | | |
| UPCIC 23 02 12 | Special Provisions - Florida | | |
| UPCIC 3 01 98 | Outline of Your Homeowner Policy | | |
| UPCIC 24 01 98 | Hurricane Deductible | | |
| UPCIC 16 01 98 | Loss Assessment Coverage | $2,000 | $5.00 |
| HO 23 70 06 97 | Windstorm Exterior Paint or Waterproofing Endorsement | | |
| UPCIC 00 07 (02-12) | Sinkhole Loss Coverage - Florida | | |
| HO 17 32 04 91R (06-07) | Unit Owners Coverage A - Special Coverage | $250,000 | $251.00 |
| HO 04 96 04 91 | No Coverage for Home Day Care Business | | |
| UPCIC 04 90 04 91 (06-07) | Personal Property Replacement Cost | $150,000 | $680.00 |
| HO 04 16 04 91 | Premises Alarm or Fire Protection System | | ($170.00) |
| | Year Built Surcharge | | |
| UPCIC 19 01 98 | Windstorm Protective Devices | | ($1,870.00) |
| | Personal Liability Increase Endorsement | $300,000 | $18.00 |
| | Medical Payment Increase Endorsement | $3,000 | $5.00 |
| | MGA Fee | | $25.00 |
| | FHCF Emergency Assessment | | $35.40 |
| | Emergency Management Preparedness Assistance Trust Fund | | $2.00 |
| | Citizens Emergency Assessment | | $27.23 |

# LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.

This replaces all previously issued policy declarations, if any and is subject to all forms and endorsements attached to this policy.

UPCIC HO Dec 02 12                Printed Date:  12/3/2015 2:12:37 PM                                2 of 2

HOMEOWNERS
HO 00 06 04 91

# HOMEOWNERS 6
# UNIT-OWNERS FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **3.a.** or **3.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in **3.a.** or **3.b.** above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in **4.a.** and **4.b.** above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means the unit where you reside shown as the "residence premises" in the Declarations.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – Dwelling

We cover:

1. The alterations, appliances, fixtures and improvements which are part of the building contained within the "residence premises";

2. Items of real property which pertain exclusively to the "residence premises";

3. Property which is your insurance responsibility under a corporation or association of property owners agreement; or

4. Structures owned solely by you, other than the "residence premises," at the location of the "residence premises."

This coverage does not apply to land, including land on which the "residence premises," real property or structures are located.

We do not cover:

1. Structures used in whole or in part for "business" purposes; or

2. Structures rented or held for rental to any person not a tenant of the "residence premises," unless used solely as a private garage.

### COVERAGE C – Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

   a. Accessories or antennas; or

   b. Tapes, wires, records, discs or other media;

   for use with any electronic apparatus.

     Copyright, Insurance Services Office, Inc., 1990     HO 00 06 04 91

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   b. Is away from the "residence premises"; and

   c. Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

   a. Accessories or antennas; or

   b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

   a. Their equipment and accessories; or

   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

      (1) Accessories or antennas; or

      (2) Tapes, wires, records, discs or other media;

      for use with any electronic apparatus.

      The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. Used to service an "insured's" residence; or

   b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured";

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

   a. Books of account, drawings or other paper records; or

   b. Electronic data processing tapes, wires, records, discs or other software media.

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages **6.**

**COVERAGE D – Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property, makes the "residence premises" not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

   a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

   Payment under **a.** or **b.** will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

   **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1.** and **2.** above for no more than two weeks.

The periods of time under **1., 2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:
   a. Debris of covered property if a Peril Insured Against causes the loss; or
   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:
   a. Your tree(s) felled by the peril of Windstorm or Hail;
   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or
   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:
   a. Does not increase the limit of liability that applies to the covered property;
   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I – CONDITION **2.d.**

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 10% of the limit of liability that applies to Coverage C for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:
   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;
   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A – DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I and II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in COVERAGE C – PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

b. Hidden decay;

c. Hidden insect or vermin damage;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material**

We cover:

a. The breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage A; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.  A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

## SECTION I – PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverages A and C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

   This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the "residence premises."

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

   This peril does not include loss to property on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by an "insured";

   b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

   c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

   This peril does not include loss caused by theft that occurs off the "residence premises" of:

   a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

   b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

   c. Trailers and campers.

10. **Falling objects.**

    This peril does not include loss to the inside of a building or property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to a building or property contained in the building.

    This peril does not include loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf, or dock.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. We also pay for tearing out and replacing any part of the building which is covered under Coverage A and on the "residence premises," if necessary to repair the system or appliance from which the water or steam escaped.

    This peril does not include loss:

    a. On the "residence premises," if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

    b. To the system or appliance from which the water or steam escaped;

    c. Caused by or resulting from freezing except as provided in the peril of freezing below; or

Copyright, Insurance Services Office, Inc., 1990

HO 00 06 04 91

d. On the "residence premises" caused by accidental discharge or overflow which occurs away from the building where the "residence premises" is located.

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing except as provided in the peril of freezing below.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I – EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

2. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

   a. Fire;

   b. Explosion; or

   c. Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

   ensues and then we will pay only for the ensuing loss.

   This exclusion does not apply to loss by theft.

3. **Water Damage,** meaning:

   a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   b. Water which backs up through sewers or drains or which overflows from a sump; or

   c. Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

   Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

5. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War,** including the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel; or

   c. Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I – CONDITIONS.

8. **Intentional Loss,** meaning any loss arising out of any act committed:

   a. By or at the direction of an "insured"; and

   b. With the intent to cause a loss.

---

HO 00 06 04 91                  Copyright, Insurance Services Office, Inc., 1990                  **Page 7 of 16**

## SECTION I – CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

   b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

   a. Give prompt notice to us or our agent;

   b. Notify the police in case of loss by theft;

   c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

   d. Protect the property from further damage. If repairs to the property are required, you must:

      (1) Make reasonable and necessary repairs to protect the property; and

      (2) Keep an accurate record of repair expenses;

   e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. As often as we reasonably require:

      (1) Show the damaged property;

      (2) Provide us with records and documents we request and permit us to make copies; and

      (3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

   g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) The time and cause of loss;

      (2) The interest of the "insured" and all others in the property involved and all liens on the property;

      (3) Other insurance which may cover the loss;

      (4) Changes in title or occupancy of the property during the term of the policy;

      (5) Specifications of damaged buildings and detailed repair estimates;

      (6) The inventory of damaged personal property described in **2.e.** above;

      (7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

      (8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. Personal property at actual cash value at the time of loss but not more than the amount required to repair or replace.

   b. Coverage A – Dwelling:

      (1) If the damage is repaired or replaced within a reasonable time, at the actual cost to repair or replace;

      (2) If the damage is not repaired or replaced, at actual cash value but not more than the amount required to repair or replace.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

    Copyright, Insurance Services Office, Inc., 1990    HO 00 06 04 91

Each party will:

  a. Pay its own appraiser; and

  b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, except insurance in the name of a corporation or association of property owners, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

If, at the time of loss, there is other insurance in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

  a. Reach an agreement with you;

  b. There is an entry of a final judgment; or

  c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A – Dwelling will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

  a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

  b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

  c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

  a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

  b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

  a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

  b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

  c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II – LIABILITY COVERAGES

### COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II – EXCLUSIONS

1. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

   c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

      (1) On an occasional basis if used only as a residence;

      (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (3) In part, as an office, school, studio or private garage;

Copyright, Insurance Services Office, Inc., 1990     HO 00 06 04 91

**d.** Arising out of the rendering of or failure to render professional services;

**e.** Arising out of a premises:

    **(1)** Owned by an "insured";

    **(2)** Rented to an "insured"; or

    **(3)** Rented to others by an "insured";

    that is not an "insured location";

**f.** Arising out of:

    **(1)** The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

    **(2)** The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

    **(3)** Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph **(1)** or **(2)** above.

    This exclusion does not apply to:

    **(1)** A trailer not towed by or carried on a motorized land conveyance;

    **(2)** A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

        **(a)** Not owned by an "insured"; or

        **(b)** Owned by an "insured" and on an "insured location";

    **(3)** A motorized golf cart when used to play golf on a golf course;

    **(4)** A vehicle or conveyance not subject to motor vehicle registration which is:

        **(a)** Used to service an "insured's" residence;

        **(b)** Designed for assisting the handicapped; or

        **(c)** In dead storage on an "insured location";

**g.** Arising out of:

    **(1)** The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

    **(2)** The entrustment by an "insured" of an excluded watercraft described below to any person; or

    **(3)** Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

    **(1)** That are not sailing vessels and are powered by:

        **(a)** Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

        **(b)** Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

        **(c)** One or more outboard engines or motors with 25 total horsepower or less;

        **(d)** One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

        **(e)** Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

            **(i)** You acquire them prior to the policy period; and

                **(a)** You declare them at policy inception; or

                **(b)** Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

            **(ii)** You acquire them during the policy period.

            This coverage applies for the policy period.

    **(2)** That are sailing vessels, with or without auxiliary power:

        **(a)** Less than 26 feet in overall length;

        **(b)** 26 feet or more in overall length, not owned by or rented to an "insured."

    **(3)** That are stored;

**h.** Arising out of:

    **(1)** The ownership, maintenance, use, loading or unloading of an aircraft;

    **(2)** The entrustment by an "insured" of an aircraft to any person; or

    **(3)** Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

**i.** Caused directly or indirectly by war, including the following and any consequence of any of the following:

**(1)** Undeclared war, civil war, insurrection, rebellion or revolution;

**(2)** Warlike act by a military force or military personnel; or

**(3)** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**j.** Which arises out of the transmission of a communicable disease by an "insured";

**k.** Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**l.** Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **e.**, **f.**, **g.**, and **h.** do not apply to "bodily Injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

**2. Coverage E – Personal Liability,** does not apply to:

**a.** Liability:

**(1)** For any loss assessment charged against you as a member of an association, corporation or community of property owners;

**(2)** Under any contract or agreement. However, this exclusion does not apply to written contracts:

**(a)** That directly relate to the ownership, maintenance or use of an "insured location"; or

**(b)** Where the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in **(1)** above or elsewhere in this policy;

**b.** "Property damage" to property owned by the "insured";

**c.** "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**d.** "Bodily injury" to any person eligible to receive any benefits:

**(1)** Voluntarily provided; or

**(2)** Required to be provided;

by the "insured" under any:

**(1)** Workers' compensation law;

**(2)** Non-occupational disability law; or

**(3)** Occupational disease law;

**e.** "Bodily injury" or "property damage" for which an "insured" under this policy:

**(1)** Is also an insured under a nuclear energy liability policy; or

**(2)** Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

**(1)** American Nuclear Insurers;

**(2)** Mutual Atomic Energy Liability Underwriters;

**(3)** Nuclear Insurance Association of Canada;

or any of their successors; or

**f.** "Bodily injury" to you or an "insured" within the meaning of part **a.** or **b.** of "insured" as defined.

**3. Coverage F – Medical Payments to Others,** does not apply to "bodily injury":

**a.** To a "residence employee" if the "bodily injury":

**(1)** Occurs off the "insured location"; and

**(2)** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**b.** To any person eligible to receive benefits:

**(1)** Voluntarily provided; or

**(2)** Required to be provided;

under any:

**(1)** Workers' compensation law;

**(2)** Non-occupational disability law; or

**(3)** Occupational disease law;

c. From any:

   **(1)** Nuclear reaction;

   **(2)** Nuclear radiation; or

   **(3)** Radioactive contamination;

  all whether controlled or uncontrolled or however caused; or

**(4)** Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

---

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

  a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

  b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

  c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other Income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

  d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

  We will not pay for "property damage":

  a. To the extent of any amount recoverable under Section I of this policy;

  b. Caused intentionally by an "insured" who is 13 years of age or older;

  c. To property owned by an "insured";

  d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

  e. Arising out of:

   **(1)** A "business" engaged in by an "insured";

   **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

   **(3)** The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

    This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

  a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

  b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

   **(1)** The director, officer or trustee is elected by the members of a corporation or association of property owners; and

   **(2)** The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

  a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

---

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II – Coverage E – Personal Liability Exclusion 2.a.(1);
2. Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS.

## SECTION II – CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and "insured";

      (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

   c. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   d. Under the coverage – Damage to Property of Others – submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person – Coverage F – Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim – Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance – Coverage E – Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

      Copyright, Insurance Services Office, Inc., 1990      HO 00 06 04 91

## SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (b) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE
## HOMEOWNERS FORM 6 UNIT – OWNERS
### FOR USE ONLY WHEN ENDORSEMENT HO 17 32 IS ATTACHED
### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**SCHEDULE\***

| | | |
|---|---|---|
| 1. | Section I – Property Coverage Limit of Liability for the Additional Coverage "Fungi", Wet or Dry Rot, or Bacteria | $ 10,000  **Each Covered Loss** $ 20,000  **Policy Aggregate** |
| 2. | Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet or Dry Rot, or Bacteria | $ 50,000 |
| \*Entries may be left blank if shown elsewhere in this policy for this coverage. | | |

**DEFINITIONS**

The following definition is added:

9.  **"Fungi"**

   a.  "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

   b.  Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I — PROPERTY COVERAGES**

**ADDITIONAL COVERAGES**

The following Additional Coverage is added:

10.  **"Fungi", Wet or Dry Rot, or Bacteria**

   a.  The amount shown in the Schedule above or on the Declaration Page is the most we will pay for:

      (1)  The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

      (2)  The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

      (3)  The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

      (4)  The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement.  The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

   b.  The coverage described in **10.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

   c.  The **Each Covered Loss** amount shown in the Schedule or on the Declaration Page for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage resulting from any one covered loss.

The **Policy Aggregate** amount shown in the Schedule or the Declaration Page for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage for all covered losses; regardless of the number of locations insured under this endorsement or number of claims-made.

   d.  If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

**SECTION I – EXCLUSIONS**

Exclusion 9. is added:

9.  **"Fungi", Wet Or Dry Rot, Or Bacteria**

   "Fungi", Wet or Dry Rot, or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

   This exclusion does not apply:

   a.  When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

   b.  To the extent coverage is provided for in the "Fungi", Wet or Dry Rot, or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

   Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

**SECTION II – CONDITIONS**

Condition **1. Limit of Liability** is deleted and replaced by the following:

1.  **Limit of Liability**

   Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet or Dry Rot, or Bacteria. That sublimit is the amount shown in the Schedule or Declaration Page. This is the most we will pay regardless of the:

(1) Number of locations insured under the policy to which this endorsement is attached;

(2) Number of persons injured;

(3) Number of persons whose property is damaged;

(4) Number of "insureds"; or

(5) Number of "occurrences" or claims-made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

Our total limit of liability under Coverage F for all medical expenses payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F shown in the Declarations.

With respect to damages arising out of "Fungi", Wet or Dry Rot, or Bacteria described in **1. Limit of Liability** of this endorsement.

Condition **2. Severability of Insurance** is deleted and replaced by the following:

**2. Severability of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II – Conditions **1. Limit of Liability**. This condition will not increase the limit of liability for this coverage.

**SECTION I AND II – CONDITIONS**

Condition **1. Policy Period** is deleted and replaced by the following:

**1. Policy Period**

This policy applies only to loss or costs in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

All other provisions of the policy apply.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

SPECIAL PROVISIONS - FLORIDA

## SECTION I – DEFINITIONS

The following Definitions are added:

10. "Personal Watercraft" means watercraft designed to carry one to three people, propelled by a water jet pump powered by an internal combustion engine and capable of speeds greater than 25 mph.

    "Personal Watercraft" includes but are not limited to watercraft often referred to as jet skis, wave runners and similar watercraft.

11. "Structural Damage"

    "Structural Damage" means a covered building, regardless of the date of its construction, has experienced the following:

    a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

    b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

    c. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

    d. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

    e. Damage occurring on or after October 15, 2005, that qualifies as substantial "structural damage" as defined in the Florida Building Code.

12. "Primary structural member"

    "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

13. "Primary structural system"

    "Primary structural system" means an assemblage of "primary structural members".

14. "Catastrophic Ground Cover Collapse"

    "Catastrophic ground cover collapse" means geological activity that results in all of the following:

    a. The abrupt collapse of the ground cover;

    b. A depression in the ground cover clearly visible to the naked eye;

    c. "Structural damage," other than settling or cracking, to the covered building insured under this policy, including the foundation; and

    d. The building or structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that building or structure.

## SECTION I - PROPERTY COVERAGES COVERAGE C PERSONAL PROPERTY SPECIAL LIMITS OF LIABILITY

Items 10. and 11. are deleted and replaced by the following:

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories and antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this Item 10.

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

b.   Is away from the "residence premises"; and

c.   Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

a.   Accessories and antennas; or

b.   Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **11.**

**PROPERTY NOT COVERED**

Item **3.b.** is deleted and replaced by the following:

3.   Motor vehicles or all other motorized land conveyances. This includes:

b.   Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

(1)   Accessories or antennas; or

(2)   Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **3.b.**

The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a.   Used to service an "insured's" residence; or

b.   Designed for assisting the handicapped;

**COVERAGE D - LOSS OF USE**

In Forms HO 00 03, HO 00 08 Item **1.** is deleted and replaced by the following:

1.   If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**SECTION 1 - ADDITIONAL COVERAGES**

8.   **Collapse** is deleted and replaced by the following:

8.   **Collapse**

a.   With respect to this Additional Coverage:

(1)   Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building, or part of the building, cannot be occupied for its intended purpose.

(2)   A building or any part of a building that is in danger of falling down or caving in

is not considered to be in a state of collapse.

(3)   A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4)   A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b.   We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1)   Perils Insured Against in Coverage **C** Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

(2)   Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

(3)   Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

(4)   Weight of contents, equipment, animals or people;

(5)   Weight of rain which collects on a roof; or

(6)   Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under Items **(2)**, **(3)**, **(4)**, **(5)**, and **(6)** unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property.

c.   If Endorsement **HO 00 15** is attached to the policy, Section I Additional Coverages **8. Collapse** in that endorsement is deleted in its entirety and Paragraph **b.(1)** above is deleted and replaced by the following:

b.(1) Perils Insured Against in Coverages **A** and **B.**

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage **C** Personal Property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          UPCIC 23 02 12

    d. If Endorsement **HO 17 31** is attached to the policy, Section I Additional Coverages **8. Collapse** in that Endorsement is deleted in its entirety and Paragraph **b.(1)** above is deleted and replaced by the following:

    **b.(1)** Perils Insured Against in Coverage **A**. In addition, the following paragraph is added: This additional coverage does not apply to Coverage **C** Personal Property.

**9.** **Glass or Safety Glazing Material is** deleted and replaced by the following:

**9.** **Glass Or Safety Glazing Material**

    **a.** We cover:

      (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

      (2) The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and

      (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

    **b.** This coverage does not include loss:

      (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

      (2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Form **HO 00 08**, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage **8.** in Form **HO 00 08**)

The following Additional Coverage is added to all Forms. With respect to **Form HO 00 04**, the words 'covered building' used below, refer to property covered under Additional Coverage **10.** Building Additions And Alterations.

**11.** **Ordinance Or Law**

    **a.** You may use up to 25% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

      (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

      (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

      (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

    **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

    **c.** We do not cover:

      (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

      (2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage **10.** in Form **HO 00 06.** and Additional Coverage **9.** in Form **HO 00 08**)

**12.** **Catastrophic Ground Cover Collapse**

"Catastrophic Ground Cover Collapse" coverage is added for:

a. Forms **HO 00 03** and **HO 00 08**

    (1) Loss to the property described in **Coverage A – Dwelling;**

    (2) Loss to the property described in **Coverage B – Other Structures;**

    (3) Loss to contents described for **Coverage C – Personal Property.**

Includes copy righted material of Insurance Services Office, Inc., with its permission.

UPCIC 23 02 12

(This is Additional Coverage 10. in Form HO 00 08)

**b.** Form HO 00 06

(1) Loss to the property described in **Coverage A – Dwelling;**

(2) Loss to contents described for **Coverage C – Personal Property.**

(This is Additional Coverage 11. in Form HO 00 06)

**c.** Form HO 00 04

(1) Loss to contents described for **Coverage C – Personal Property.**

(This is Additional Coverage 11. in Form HO 00 04)

## SECTION I - PERILS INSURED AGAINST

## COVERAGE A – DWELLING and COVERAGE B – OTHER STUCTURES

In Form HO 00 03 Subsection 2.e.(6) is deleted and replaced with the following:

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios foundations, walls, floors, roofs or ceilings except for a "Catastrophic Ground Cover Collapse" loss. The Section I - Earth Movement Exclusion does not apply to a "Catastrophic Ground Cover Collapse" loss.

## SECTION I EXCLUSIONS

**1.** **Ordinance or Law** is deleted and replaced by the following:

**1.** **Ordinance or Law,** meaning any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion 1.a. does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is Exclusion 1.a. in Form HO 00 03.)

**2.** **Earth Movement** is deleted and replaced by the following:

**2.** **Earth Movement,** meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

**a.** Fire; or

**b.** Explosion;

ensues and then we will pay only for the ensuing loss.

This Exclusion 2. does not apply to loss by:

**a.** Theft; or

**b.** "Catastrophic ground cover collapse".

(This is Exclusion 1.b. in Form HO 00 03.)

**4.** **Power Failure** is deleted and replaced by the following:

**4.** **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion 1.d. in Form HO 00 03.)

## SECTION I – CONDITIONS

The following is added to **2. Your Duties After Loss:**

**h.** You must give notice of a claim, a supplemental claim, or a reopened claim for loss or damage caused by the peril of windstorm or hurricane, with us in accordance with the terms of this policy and within three years after the hurricane first made landfall or the windstorm caused the covered damage. For purposes of this section, the term "supplemental claim" or "reopened claim" means any additional claim for recovery from us for losses from the same hurricane or windstorm which we have previously adjusted pursuant to the initial claim. This section does not affect any applicable limitations on civil actions for claims, supplemental claims, or reopened claims timely filed under this section.

**3.** **Loss Settlement (HO 00 03)** is deleted and replaced by the following:

**3.** **Loss Settlement (HO 00 03)** property losses are settled as follows:

**a.** Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures, **other than screened enclosures,** that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**b.** Buildings under Coverage A or B at replacement cost without deduction for de-

preciation, subject to the following:

(1) If at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

   (a) The limit of liability under this policy that applies to the building;

   (b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

   (c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

   (a) The actual cash value of that part of the building damaged; or

   (b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

   (a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

   (b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

   (c) Underground flues, pipes, wiring and drains.

(4) We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We will then pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred,

subject to b.(1) and b.(2) above.

If a total loss of the dwelling occurs, the provisions of b.(4) above do not apply and we will pay the replacement cost coverage without reservation or holdback of any depreciation in value, pursuant to Florida Statutes. This does not prohibit us from exercising our right to repair the damaged property in compliance with this policy and pursuant to Florida Statutes.

(5) If the dwelling where loss or damage occurs has been vacant for more than 30 consecutive dates before the loss or damage, we will:

   (a) Not pay for any loss or damage caused by any of the following perils, even if they are covered causes of loss:

      (i) Vandalism;

      (ii) Sprinkler leakage caused by or arising out of the freezing of a fire protective sprinkler system, unless you have protected the system against freezing;

      (iii) Dwelling glass breakage;

      (iv) Water damage;

      (v) Theft; or

      (vi) Attempted theft.

Dwellings under construction are not considered vacant.

(6) In the event of a "catastrophic ground cover collapse," any repairs must be made in accordance with the recommendations of our professional engineer. If our professional engineer selected or approved by us determines that repairs cannot be completed within the applicable limit of insurance, we will at our option, either:

   (a) Complete the professional engineer's recommended repairs; or

   (b) Pay the policy limits without a reduction for the repair expenses incurred.

3. **Loss Settlement (HO 00 06)** is deleted and replaced by the following:

3. **Loss Settlement (HO 00 06)** property losses are settled as follows:

a. Personal property at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Coverage A – Dwelling:

   (1) At the actual cost to repair or replace.

   (2) We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We will then pay

any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred, subject to **b.(1)** above and this item **b.(2)**.

If a total loss of the dwelling occurs, the provisions of **b.(2)** above do not apply and we will be the replacement cost coverage without reservation or holdback of any depreciation in value, pursuant to Florida Statutes. This does not prohibit us from exercising our right to repair damaged property in compliance with this policy and pursuant to Florida Statutes.

**3.  Loss Settlement (HO 00 08)** is deleted and replaced by the following:

**3.  Loss Settlement (HO 00 08)** property losses are settled as follows:

  **a.**  Property of the following types:

  **(1)**  Personal property;

  **(2)**  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

  **(3)**  Structures, **other than screened enclosures,** that are not buildings;

  at actual cash value at the time of loss but not more than the amount required to repair or replace.

  **b.**  Buildings under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

  **(1)**  We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

  **(a)**  The limit of liability under this policy that applies to the building;

  **(b)**  The replacement cost of that part of the building damaged for like construction and use on the same premises; or

  **(c)**  The necessary amount actually spent to repair or replace the damaged building.

  **(2)**  We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We will then pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred, subject to **b.(1)** above.

  If a total loss of the dwelling occurs, the provisions of **b.(2)** above do not apply and we will pay the replacement cost coverage without reservation or holdback of any depreciation in value, pursuant to Florida Statutes. This does not prohibit us from

exercising our right to repair the damaged property in compliance with this policy and pursuant to Florida Statutes.

  **(3)**  If the dwelling where loss or damage occurs has been vacant for more than 30 consecutive dates before the loss or damage, we will:

  **(a)**  Not pay for any loss or damage caused by any of the following perils, even if they are covered causes of loss:

  **(i)**  Vandalism;

  **(ii)**  Sprinkler leakage caused by or arising out of the freezing of a fire protective sprinkler system, unless you have protected the system against freezing;

  **(iii)**  Dwelling glass breakage;

  **(iv)**  Water damage;

  **(v)**  Theft; or

  **(vi)**  Attempted theft.

  Dwellings under construction are not considered vacant.

  **(4)**  In the event of a "catastrophic ground cover collapse," any repairs must be made in accordance with the recommendations of our professional engineer. If our professional engineer selected or approved by us determines that repairs cannot be completed within the applicable limit of insurance, we will at our option, either:

  **(a)**  Complete the professional engineer's recommended repairs; or

  **(b)**  Pay the policy limits without a reduction for the repair expenses incurred.

**6.  Appraisal** is deleted and replaced by the following:

**6.  Mediation Or Appraisal**

  If you and we fail to agree on the amount of loss, either may:

  **a.**  Demand a mediation of the loss in accordance with the rules established by the Department of Financial Services. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

b.  Request an appraisal of the loss. However, both parties must agree to the appraisal process. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

(1)  Pay its own appraiser; and

(2)  Bear the other expenses of the appraisal and umpire equally.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

8.  **Suit Against Us** is deleted and replaced by the following:

8.  **Suit Against Us** No action can be brought unless the policy provisions have been complied with and the action is started within 5 years after the date of loss.

10.  **Loss Payment** is deleted and replaced by the following:

10.  **Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable upon the earliest of the following:

a.  20 days after we receive your proof of loss and reach written agreement with you; or

b.  60 days after we receive your proof of loss and:

(1)  There is an entry of a final judgment; or

(2)  There is a filing of an appraisal award or a mediation settlement with us.

c.  Under Florida Statutes we are required to pay or deny an initial, reopened, or

supplemental property insurance claim or portion of a claim, within ninety (90) days of notice of such claim unless there are reasonable circumstances which prevent us from so doing.

## SECTION II - EXCLUSIONS

Under **1. Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others,** Items **a., g.** and **I.** are deleted and replaced by the following:

a.  Which is expected or intended by one or more "insureds";

g.  Arising out of:

(1)  The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2)  The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3)  Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, including "personal watercraft" or are sailing vessels, whether owned by or rented to an "insured."

This exclusion does not apply to watercraft:

(1)  That are not sailing vessels and are powered by:

(a)  Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b)  Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c)  One or more outboard engines or motors with 25 total horsepower or less;

(d)  One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e)  Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(i)  You acquire them prior to the policy period; and

(a)  You declare them at policy inception; or

(b)  Your intention to insure is reported to us in writing within 45 days after you acquire the outboard

Includes copyrighted material of Insurance Services Office, Inc., with its permission.        UPCIC 23 02 12

engines or motors.

    (ii) You acquire them during the policy period.

This coverage applies for the policy period.

**(2)** That are sailing vessels, with or without auxiliary power:

    **(a)** Less than 26 feet in overall length;

    **(b)** 26 feet or more in overall length, not owned by or rented to an "insured."

**l.** Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

The following exclusions are added:

**m.** caused directly or indirectly by animals you own or are kept at the "insured location". Such loss is excluded for all activity or conduct of the insured when an animal owned or kept at the "insured location" is involved in any way with the loss either directly or indirectly. Such loss Is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss

**n.** caused directly or indirectly by the ownership, maintenance or use by anyone of any of the following equipment and/or accessories: **(This exclusion n. does not apply to an HO 08)**

    **(1)** swimming pool slides;

    **(2)** diving boards;

    **(3)** trampolines; and

    **(4)** skate board ramps.

Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

**SECTION II - CONDITIONS**

**1. Limit of Llability** is deleted and replaced by the following:

**1. Limit of Liability**

**a.** Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage **E** as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

**b. Sub-limit Of Liability**

Subject to Paragraph **a.** above, our total liability under Coverage **E** for damages for

which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded, Is $10,000. This sub-limit is within, but does not increase the Coverage **E** limit of liability.

**c.** The limit of liability in **a.** above and sub-limit in **b.** above apply regardless of the number of "insureds", claims made or persons injured.

**d.** Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage **F** as shown in the Declarations.

**SECTION I AND II - CONDITIONS**

**2. Concealment or Fraud** is deleted and replaced by the following:

**2. Concealment Or Fraud**

**a.** Under **Section I - Property Coverages**, with respect to all "insureds" covered under this policy, we provide no coverage for loss under **Section I - Property Coverages** if, whether before or after a loss, one or more "insureds" have:

    **(1)** Intentionally concealed or misrepresented any material fact or circumstance;

    **(2)** Engaged in fraudulent conduct; or

    **(3)** Made material false statements;

relating to this insurance.

**b.** Under **Section II - Liability Coverages**, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

    **(1)** Intentionally concealed or misrepresented any material fact or circumstance;

    **(2)** Engaged in fraudulent conduct; or

    **(3)** Made material false statements;

relating to this insurance.

**5. Cancellation**

Paragraphs **b.**, **c.**, and **d. are** deleted and replaced by the following and **e.** is added:

**b.** When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

**c.** We may also cancel this pollcy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

    **(1)** When you have not paid the premium, we may cancel at any time by letting you know

at least ten (10) days before the date cancellation takes effect.

(a) However, when a (mortgage company) lender is responsible for paying the premium through an escrow account and the premium payment is not more than ninety (90) days overdue we will reinstate the insurance policy, retroactive to the date of cancellation. The lender shall reimburse the insured for any penalty or fees we imposed upon you for purposes of reinstating the policy.

(2) When this policy has been in effect for ninety (90) days or less, we may cancel for any reason, except we may not cancel:

(a) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(b) On the basis of a single claim on a property insurance policy which is the result of water damage may not be used as the sole cause for cancellation or nonrenewal unless we can demonstrate that the insured has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

Except as provided in Item 5.b. or 5.c.(1) above, we will let you know of our action at least 20 days before the date cancellation takes effect.

(3) When this policy has been in effect for more than ninety (90) days, we may cancel:

(a) If there has been a material misstatement;

(b) If the risk has changed substantially since the policy was issued;

(c) In the event of failure to comply with underwriting requirements established by us within ninety (90) days of the effective date of coverage;

(d) If the cancellation is for all insureds under policies of this type for a given class of insureds;

(e) On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has

failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

(f) On the basis of a single claim which is the result of water damage if we can demonstrate that the insured has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

Except as provided in Item 5.c.(1) above, If the "residence premises" has not been insured by us or any of our affiliated insurers for at least five (5) years immediately prior to the date of the written notice we will let you know at least one hundred (100) days before the cancellation takes effect. However, if the cancellation occurs between June 1st and November 30th we are required to give you the one hundred (100) day notice or written notice by June 1st whichever is earlier. Proof of mailing will be sufficient proof of notice.

Except as provided in Item 5.c.(1) above, If the "residence premises" has been insured by us or any of our affiliated insurers for at least five (5) years immediately prior to the date of the written notice we will let you know at least one-hundred and twenty (120) days before the cancellation takes effect. Proof of mailing will be sufficient proof of notice.

d. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

e. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within fifteen (15) working days after the date cancellation takes effect.

6. **Nonrenewal** is deleted and replaced by the following:

6. **Nonrenewal**

We may elect not to renew this policy. However, we will not nonrenew this policy:

a. On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

b. On the basis of filing claims for sinkhole loss However, we may elect not to renew the policy if:

(1) The total of such payments equals or exceeds the policy limits of coverage for property damage to the covered building, for the policy in effect on the date of loss, as set forth on the declarations page; or

(2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

c. On the basis of a single claim on a property insurance policy which is the result of water damage may not be used as the sole cause for cancellation or nonrenewal unless the we can demonstrate that the insured has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property

If the "residence premises" has not been insured by us or any of our affiliated insurers for at least five (5) years immediately prior to the date of the written notice we will let you know at least one hundred (100) days before the nonrenewal takes effect.   However, if the nonrenewal occurs between June 1st and November 30th we are required to give you the one hundred (100) day notice or written notice by June 1st whichever is earlier.   Proof of mailing will be sufficient proof of notice.

If the "residence premises" has been insured by us or any of our affiliated insurers for at least five (5) years immediately prior to the date of the written notice we will let you know at least one-hundred and twenty (120) days before the date nonrenewal

takes effect. Proof of mailing will be sufficient proof of notice.

8.  **Subrogation**

In Form **HO 00 06** the following sentence is added to the first paragraph of this condition:

However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the "residence premises" is located.

The following conditions are added:

10. **Renewal Notification**

If we elect to renew this policy, we will let you know, in writing:

a. Of our decision to renew this policy; and

b. The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least forty-five (45) days before the expiration date of this policy.

11. **Advance Notice**

A company employee, adjuster, independent adjuster, attorney, investigator, or other persons acting on behalf of us that needs access to an insured or claimant or to the insured property that is the subject of a claim must provide at least 48 hours notice to the insured or claimant, public adjuster, or legal representative before scheduling a meeting with the claimant or an onsite inspection of the insured property. The insured or claimant may deny access to the property if the notice has not been provided. The insured or claimant may waive the 48-hour notice.

**All other provisions of this policy apply**

   Includes copy righted material of Insurance Services Office, Inc., with its permission.   UPCIC 23 02 12

## UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY
## OUTLINE OF YOUR HOMEOWNERS POLICY

This outline is being provided to help you more easily understand your Homeowners Policy. It highlights the major coverages, exclusions, limitations and deductibles of your policy and provides information on discounts, surcharges, cancellation and nonrenewal. However, this is just a guide and not a legal contract. **Please read your Homeowners policy carefully for complete descriptions and details.**

**The following outline is for informational purposes only. Florida law prohibits this outline from changing any of the provisions of the insurance contract which is the subject of this outline.** Any endorsement including changes in types of coverage, coverage limits, exclusions, deductibles, renewal or cancellation provisions, surcharges, credits, or any other changes will be sent separately.

## SECTION I - PROPERTY COVERAGE

### Coverage A - Dwelling

Applies to your residence premises and protects your dwelling and structures attached to your dwelling. It also protects against covered loss to building materials located on your residence premises which are being used in connection with your residence premises.

### Coverage B - Other Structures

Protects against covered loss to any structure on your residence premises, that is not used for business purposes, not physically attached to the dwelling

### Coverage C - Personal Property

Protects against covered loss to your personal property such as clothing and furniture. Special limits apply to some types of personal property including but not limited to: money, securities, watercraft, theft of jewelry, firearms and silverware. Please review your policy for a complete list of items that have special limits or are excluded.

### Coverage D - Loss Of Use

Protects against loss resulting from any additional living expenses you incur while you are temporarily unable to live at your home because of a covered loss. Payment would include such items as temporary lodging and increased costs for food.

## PERILS INSURED AGAINST

This policy insures under Coverage A, B, and C, if applicable to your policy, against sudden and accidental direct physical losses except as limited or excluded by your policy, caused by: Fire or Lightning; Windstorm or Hail; Explosion; Riot or Civil Commotion; Aircraft; Vehicles; Smoke; Vandalism or Malicious Mischief; Theft; Falling Objects; Accidental Discharge or Overflow of Water from Plumbing, Heating, Air Conditioning or Household Appliance; and Freezing of Plumbing or Household Appliances.

**Note:** If your property is located in a Florida Windstorm Underwriting Association (FWUA) designated area, "Windstorm or Hail" coverage **must be** excluded from your policy. Be sure to obtain this important coverage if it has been excluded from your policy.

## PROPERTY EXCLUSIONS

This policy does not provide protection under Coverages A, B and C, if applicable to your policy, for losses resulting in any manner from: Earth Movement, other than a covered sinkhole loss; Flood; Off Premises Power Failure; Neglect; War or Nuclear Hazard; and, Intentional or Criminal Acts.

Please review your policy for a complete list of exclusions.

## SECTION II - LIABILITY COVERAGE

### Coverage E - Personal Liability

Generally provides coverages for bodily injury or property damage that you or a person insured under your policy are legally obligated to pay. The bodily injury or property damage must arise from an occurrence covered under Section II of your policy. Coverage for Animal Liability, under certain conditions, and Home Day Care Operations, is not covered.

### Coverage F - Medical Payments To Others

Provides coverages for reasonable and necessary medical expenses if a guest is injured on your premises or off the insured premises under certain circumstances. The bodily injury must arise from an occurrence covered under Section II of your policy with limited exceptions.

**Note:** Coverage E - Personal Liability and Coverage F - Medical Payments To Others do not apply to "Bodily Injury" or "Property Damage" arising out of the ingestion or inhalation of lead in any form or substance. Radon and pollutants are also excluded.

UPCIC-3 (1/98)

## UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY
## OUTLINE OF YOUR HOMEOWNERS POLICY

### NONRENEWAL AND CANCELLATION PROVISIONS

All cancellations are granted a pro-rata return of premium. Pro-rata means no Penalty for early cancellation.

### Your Right To Cancel

You may cancel the policy at any time, for any reason, by giving us advance written notice of the future cancellation effective date.

### Our Right to Cancel

If your policy has been in effect for 90 days or less and the insurance is canceled for other than nonpayment of premium we may cancel for any valid reason by giving you at least 20 days notice before the cancellation effective date, except where there has been a material misstatement, misrepresentation, or failure to comply with underwriting requirements established in the first 90 days, then we may cancel immediately.

If your policy has been in effect over 90 days, or if your policy is a renewal with us, we may cancel your policy for only a limited number of reasons by giving you at least 90 days advance written notice before the cancellation becomes effective. These include but are not limited to material misstatement or substantial change of risk.

If the cancellation is due to nonpayment of premium, we will give you at least 10 days advance written notice.

### Nonrenewal

If we do not intend to renew your policy we will mail notice to you at least 90 days before the expiration date of the policy. The renewal premium payment must be received no later than the renewal date or the policy will terminate.

The following are brief descriptions of the premium credits that may be available on your homeowners policy. Your policy Declarations page will show which of these credits, if any, apply to your policy.

**Protective Devices** - If your home has a central station burglar alarm, central station fire alarm or automatic fire sprinkler system, you maybe eligible for premium credits.

**Deductible Credits** - A hurricane deductible of 2% and a standard deductible of $1,000 apply to your policy, however if your policy excludes wind the hurricane deductible does not apply. This is the amount of the loss you must incur before this policy pays. Deductible options greater than the standard deductibles may be available at a premium credit. Deductibles less than the standard deductibles may be available which will result in premium increase.

**Windstorm Protective Device** - This credit is available for homes equipped with qualifying storm shutters or other protective devices.

**Building Code Compliance** - This credit is available on homes built in compliance with accepted national building codes designed to lessen the effect of losses resulting from windstorms and hurricanes.

**Superior Construction** - Certain homes of fire resistive or wind resistive construction are eligible for a premium credit.

Please contact your Agent for further information regarding the above Credits.

**PREMIUM CREDITS**

**THIS OUTLINE IS FOR INFORMATIONAL PURPOSES ONLY. READ YOUR POLICY CAREFULLY. YOUR AGENT WILL ASSIST YOU WITH ANY QUESTIONS ABOUT YOUR POLICY.**

UPCIC-3 (1/98)

UPCIC 24 01 98

**UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**HURRICANE DEDUCTIBLE**
**Applies To All Homeowners Forms**

It is agreed that your policy is changed as follows:

A.  In the Definitions section of the policy, the following definition is added:

**"Hurricane" means:**
A TROPICAL WEATHER SYSTEM THAT HAS BEEN DECLARED AND DEFINED BY THE National Oceanic and Atmospheric Administration (NOAA), Hurricane Center of the National Weather Service to be a hurricane, which is a tropical cyclone windstorm, having a well defined rotary circulation, and constant surface wind speeds of seventy-four (74) miles per hour or greater.

B.  Under Section I - Conditions, the following conditions are added:

**Deductible:**
We will pay when a covered loss exceeds the deductible shown on the Policy Declarations. We will then pay only the excess amount, unless we have  indicated otherwise in this policy.

**Hurricane Deductible:**
The hurricane deductible applies in the event of sudden and accidental direct physical loss caused by a hurricane to property covered under Section I of this policy.

The hurricane deductible amount will appear on your Policy Declaration as hurricane deductible.  The hurricane deductible will be applied to your homeowners policy Coverage A - Dwelling limit of liability or your renters or condominium unit owners policy Coverage C - Personal Property limit of liability, as shown on your Policy Declarations.  We will THEN PAY ONLY THE EXCESS AMOUNT, UNLESS WE HAVE INDICATED OTHERWISE in this policy.

The deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss.  When the hurricane deductible applies, no other deductible provision in Section I of this policy applies to covered damage or losses caused by hurricane.

The hurricane deductible applies during the following time periods:

1.  Beginning at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

2.  continuing for the time period during which the hurricane conditions exist anywhere in Florida; and

3.  ending 72 hours following the termination of the last hurricane watch or hurricane warning for any part of Florida by the National Hurricane Center of the National Weather Service.

All other provisions of this policy apply.

UPCIC 24 01 98          Copyright, Insurance Services Office

UPCIC 16 01 98

## UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

## LOSS ASSESSMENT COVERAGE

1. Section 1. Additional Coverages - 7, and Section II. Additional Coverages - 4, are deleted in all policy forms HO 00 03 04 91, HO 00 04 04 91, and HO 00 06 04 91 and replaced by the following:

**SECTION I. - Additional Coverages**

7. Loss Assessment

We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of a direct loss to the property owned BY ALL MEMBERS COLLECTIVELY, CAUSED BY A PERIL Insured Against Under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover loss assessments charged against you or a corporation of association of property owners by any governmental body.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

**SECTION II. - Additional Coverages**

4. Loss Assessment

A. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

(1) "Bodily injury" or "property damage" NOT EXCLUDED UNDER SECTION II OF THIS POLICY; OR

(2) Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

a. The director, officer or trustee is elected by the members of a corporation or association of property owners; and

b. The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charges against you as owner or tenant of the "residence premises."

B. We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

(1) One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

(2) A covered act of a director, officer or trustee.  An act involving more than one director, officer or trustee is considered to be a single act.

The following does not apply to this coverage:

Section II - Coverage E - Personal liability Exclusion 2.a.(1).

2. Increased Limit - Residence Premises

For an additional premium, the limit of liability for Section I Additional Coverage 7 and Section II Additional Coverage 4, Loss Assessment, is increased to:

**Increase in Limit of Liability $ 9,000**

**Total Limit of Liability $ 10,000**

SPECIAL LIMIT - We will not pay more than $1,000 of your assessment that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

Copyright, Insurance Services Office

**HO 23 70 06 97**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WINDSTORM EXTERIOR PAINT OR WATERPROOFING
EXCLUSION - SEACOAST - FLORIDA**

A. **EXCLUSION**

Coverage for any building or structure under this policy excludes loss caused by:

1. Windstorm or hail; or

2. Windstorm during a hurricane;

to paint or waterproofing material applied to the exterior of the building or structure.

B. **Hurricane Described**

1. A hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service;

2. A hurricane occurrence:

   a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service; and

   b. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

ALL OTHER PROVISIONS OF THIS POLICY APPLY.

**HO 23 70 06 97**            Copyright, Insurance Services Office

**ATTACH THIS ENDORSEMENT TO YOUR POLICY**
**SINKHOLE COVERAGE**

**DEFINITIONS**

The following definitions are added:

"Sinkhole" means a landform created by subsidence of soil, sediment, or rock as underlying strata are dissolved by groundwater. A sinkhole forms by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.

"Sinkhole activity" means settlement or systematic weakening of the earth supporting the covered building only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

"Sinkhole loss" means structural damage to the covered building, including the foundation, caused by "sinkhole activity". Contents coverage and additional living expenses apply only if there is "structural damage" to the covered building caused by "sinkhole activity".

**SECTION I - PERILS INSURED AGAINST. (HO3; HO4; HO6; and HO8).**

The following peril is added.

**Sinkhole Loss Coverage**

We insure for direct physical loss to property covered under Section I caused by a "sinkhole loss", including the costs incurred to:

    **a.**    Stabilize the land and building; and

    **b.**    Repair the foundation;

in accordance with the recommendations of the professional engineer who verifies the presence of a "sinkhole loss" in compliance with Florida sinkhole testing standards and in consultation with you.

Contents coverage and additional living expenses apply only if there is "structural damage" to the covered building caused by "sinkhole activity".

**SECTION I – EXCLUSIONS**

With respect to coverage provided by this endorsement:

**1.**    The **Earth Movement** Exclusion does not apply.

**2.**    We do not insure for loss caused by "catastrophic ground cover collapse".

**SECTION I – CONDITIONS**

**3. LOSS SETTLEMENT.** The following is added. **(HO3; HO6 and HO8).**

**Loss Settlement**

With respect to a loss to buildings covered under Section I caused by a "sinkhole loss",

We will pay for the loss as follows:

    **(a).**    We will pay no more than the actual cash value of the damaged property, not including underpinning or grouting or any other repair technique performed below the existing foundation of the building, until you enter into a contract for the performance of building stabilization or foundation repairs. Once you enter into such contract, we will settle the loss as described in this Condition and pay the amount necessary to begin and perform such repairs as work is performed and as expenses are incurred.

    However, if the cost to repair or replace the damage is both:

        **(1)**    Less than 5% of the amount of insurance in this policy on the building; and

        **(2)**    Less than $2,500;

    we will settle the loss as noted in this Condition whether or not you have entered into a contract to perform the building stabilization or foundation repairs.

    **(b).**    If the repairs have begun and the professional engineer selected or approved by us determines that the recommended repairs cannot be completed within the policy limits, we must:

        **(1)**    Complete the recommended repairs; or

        **(2)**    Pay the policy limits without a reduction for the repair expenses incurred.

**6. Mediation Or Appraisal**

With respect to coverage provided by this endorsement, the Mediation Or Appraisal Condition is replaced by the following:

6. **Neutral Evaluation**

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for stabilizing the land and building and foundation repairs, or if we deny your claim, either party may file a request with the Florida Department of Financial Services (the Department) for neutral evaluation in accordance with the rules established by the Department. In this event, you and we shall mutually select a neutral evaluator from a list maintained by the Department. If you and we fail to agree to a neutral evaluator within 14 business days, the Department shall appoint a neutral evaluator. The neutral evaluator shall make reasonable efforts to hold the conference within 90 days after the receipt of the request by the department. Failure of the neutral evaluator to hold the conference within 90 days does not invalidate either party's right to neutral evaluation or to a neutral evaluation conference held outside this timeframe. The recommendation of the neutral evaluator will not be binding on you or us.

We will pay the reasonable costs associated with the neutral evaluation.

8. **Suit Against Us**

With respect to coverage provided by this endorsement, the **Suit Against Us** Condition is replaced by the following:

8. **Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within 5 years after the date of loss; except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or 5 years, whichever is later.

The following are added:

17. **Notice Of Sinkhole Claim**

Any claim, including, but not limited to, initial, supplemental, and reopened claims under an insurance policy that provides sinkhole coverage is barred unless notice of the claim was given to the insurer in accordance with the terms of the policy within 2 years after the policyholder knew or reasonably should have known about the "sinkhole loss".

18. **Sinkhole Testing**

If we deny the claim, without performing testing, you may demand testing.

1.  Your demand for testing must be communicated to us in writing within 60 days after your receipt of the denial of the claim.

2.  You shall pay 50 percent of the actual costs of the analyses and services provided or $2,500, whichever is less.

3.  We will reimburse you for these costs if our engineer or geologist provides written certification that there is "sinkhole loss".

19. **Building Stabilization Contract**

In order to prevent additional damage to the building or structure, you must enter into a contract for the performance of building stabilization and foundation repairs within 90 days after we confirm coverage for the "sinkhole loss" and notify you accordingly. This time period is tolled if either you or we invokes the neutral evaluation process, and begins again 10 days after the conclusion of the neutral evaluation process.

20. **Building Stabilization and Repair Completion**

The stabilization and all other repairs to the structure must be completed within 12 months after entering into the contract for repairs unless:

1.  There is a mutual agreement between us and you;

2.  The claim is involved with the neutral evaluation process; or

3.  The claim is in litigation.

21. **Rebates**

You may not accept a rebate from any person performing the repairs. If you receive a rebate, coverage is void and you must refund the amount of the rebate to us.

22. **Submitting A Claim Without Good Faith**

If we obtain written certification that there is no "sinkhole loss" or that the cause of the damage was not "sinkhole activity", and if you submit the sinkhole claim without good faith grounds for submitting such claim, you shall reimburse us for 50 percent of the actual costs of the analyses and services provided; however, you are not required to reimburse us more than $2,500 with respect to any claim. You are required to pay reimbursement under this subsection only if you requested the analysis and services provided and we, before ordering the analysis, inform you in writing of your potential liability for reimbursement and give you the opportunity to withdraw the claim.

23. **Sinkhole Report**

As a precondition to accepting payment for a "sinkhole loss", you must file a copy of any sinkhole report regarding the insured property which was prepared on your behalf or your request with the county clerk of the court. You shall bear the cost of filing and recording the sinkhole report. The recording of the report does not:

a. Constitute a lien, encumbrance, or restriction on the title to the real property or constitute a defect in the title to the real property;

b. Create any cause of action or liability against any grantor of the real property for breach of any warranty of good title or warranty against encumbrances; or

c. Create any cause of action or liability against a title insurer that insures the title to the real property.

All other provisions of this policy apply.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# UNIT- OWNERS COVERAGE A

### Special Coverage Form HO 00 06 Only

For an additional premium, the Perils Insured Against applying to Coverage A are amended as follows:

Perils Insured Against

We insure against risk of direct loss to property described in Coverage A, only if that loss is a physical loss to property.

However, we do not insure, for losses:

1. Which involve the collapse of your dwelling, other than as provided in the **Additional Coverages ( Collapse).**

2. That are caused by the following:

   a. The freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or other household appliance. By the discharge, leakage or overflow from within a system or appliance caused by freezing. This exclusion applies if the unit is vacant, unoccupied or being constructed. However, this exclusion does not apply if you have used reasonable care to:

      (1) have maintained the heat in the building; or
      (2) you had shut off the water supply and drained the systems and appliances of their water.

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1) Fence, pavement, patio or swimming pool;
      (2) Foundation, retaining wall, or bulkhead; or
      (3) Pier, wharf or dock

   c. Theft in or to a unit under construction, or of materials and supplies for use in the construction until the unit is finished and occupied;

   d. From vandalism and/or malicious mischief if the unit has been vacant for more than 30 consecutive days immediately prior to the loss. A unit under construction is not considered vacant;

   e. Wear and tear, marring, deterioration;

   f. Inherent vice, latent defect, mechanical breakdown;

   g. Smog, rust or other corrosion;

   h. Smoke from agricultural smudging or Industrial operations;

   i. Pollutants that were either discharged, dispersed, seeped, migrated, released or escaped from it's place of containment. If the dispersal, seepage, migration, release or escape from the place of containment was from a covered peril under Coverage C of this policy we will cover the loss. The definition of Pollutants includes the following:

      (1) irritants (i.e. solid, liquid, gaseous or thermal);
      (2) contaminants (i.e. smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste); and
      (3) waste is further defined to include materials to be recycled, reconditioned or reclaimed.

   j. The settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

   k. Birds, vermin, rodents, or insects; or Animals owned or kept by an "insured."

   l. The constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   If any of the above cause water damage that is not excluded, from a plumbing, heating, air conditioning, automatic fire protective sprinkler system or household appliance, we will cover the loss caused by the water. This will include the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover the loss to the system or appliance from which this water escaped.

3. Excluded under Section I - Exclusions

   Under items **1.** and **2.** any ensuing loss to property described in Coverage A, not excluded or excepted in this policy, is covered.

   The following exclusions are added to **SECTION I – EXCLUSIONS**

   We do not insure for loss to property described in Coverage A caused by any of the following. However, any ensuing loss to property described in Coverage A not excluded or excepted in this policy is covered.

   a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION I – EXCLUSIONS,** other than exclusions **b.** and **c.** below, to produce the loss;

   b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

   c. **Faulty, inadequate or defective:**

      (1) Planning, zoning, development, surveying, siting;
      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      (3) Materials used in repair, construction, renovation or remodeling; or
      (4) Maintenance;

      of part or all of any property whether on or off the "residence premises."

**All other provisions of this policy apply**

HO 04 96 04 91

<u>NO</u> SECTION II - LIABILITY COVERAGES FOR
HOME DAY CARE BUSINESS
<u>LIMITED</u> SECTION I - PROPERTY COVERAGES FOR
HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II - Exclusions;

2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - Item 8. Imposes that limit on "business" property on the "residence premises." (Item 8. Corresponds to Item 5. In Form HO 00 08.)

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - Item 9. Imposes that limit on "business" property away from the "residence premises."  Special Limit of Liability item 9. Does not apply to adaptable electronic apparatus as described in Special Limit of Liability items 10. And 11. (Items 9., 10. And 11. correspond to items 6., 7. And 8. respectively in Form HO 00 08.)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

HO 04 96 04 91          Copyright, Insurance Services Office

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
## PERSONAL PROPERTY REPLACEMENT COST

**SECTION I**

For additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

    **a.** Coverage C-Personal Property;

    **b.** If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

    **a.** Jewelry;

    **b.** Furs and garments trimmed with fur or consisting principally of fur;

    **c.** Cameras, projection machines, films and related articles of equipment;

    **d.** Musical equipment and related articles of equipment;

    **e.** Silverware, silver-plated ware, goldware, gold plated ware and pewter ware, but excluding pens, pencils, flasks, smoking implements or jewelry; and

    **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

**1. PROPERTY NOT ELIGIBLE**

Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

    **a.** Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

    **b.** Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

    **c.** Articles not maintained in good or workable condition.

    **d.** Articles that are outdated or obsolete and are stored or not being used.

**2. REPLACEMENT COST**

The following loss settlement procedure applies to all property insured under this endorsement:

We will pay no more than the least of the following amounts:

    **a.** The full cost of repair at the time of loss;

    **b.** The limit of liability that applies to Coverage **C**, if applicable;

    **c.** An applicable special limits of liability stated in this policy; or

    **d.** For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

**ALL OTHER PROVISIONS OF THIS POLICY APPLY**

**PREMISES ALARM OR
FIRE PROTECTION SYSTEM**

HO 04 16 04 91

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the **residence premises**.  You agree to maintain this system in working order and to notify us promptly of any change made to the system or if it is removed.

Copyright, Insurance Services Office

HO 04 16 04 91

UPCIC 19 01 98

## UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

### WINDSTORM PROTECTIVE DEVICES

For the Premium charged:

A. We acknowledge the installation of storm shutters or other windstorm protective devices, reported by you to us, that protect all exterior wall and roof openings, including doors, windows, skylights and vents, other than soffit and roof ridge vents, that are part of:

    1. All buildings owned by you and located on, or at the location of, the "residence premises"; or

    2. A covered condominium or cooperative unit; or

    3. A one-family dwelling or an apartment unit in a two or more family building in which you reside as a tenant and which contains covered personal property.

B. You agree to:

    1. Maintain each storm shutter or other windstorm protective device in working order;

    2. Close and secure all storm shutters or other windstorm protective devices when necessary or arrange for others to do so in your absence; and

    3. Let us know promptly of:

        a. The alteration, disablement, replacement, or removal of, or significant damage to, any storm shutter or other windstorm protective device; or

        b. Any alterations or additions to existing buildings owned by you or the construction of any new buildings owned by you.

While your failure to comply with any of the conditions in B. above will not result in denial of a claim for loss caused by the peril of Windstorm or Hail, we reserve the right to discontinue the benefits of this endorsement, including any related premium credit; in the event of such a failure.

All other  provisions of the policy apply.

UPCIC  19 01 98              Copyright, Insurance Services Office

## GENERAL RELEASE

**KNOW ALL MEN BY THESE PRESENTS:** In consideration of receipt of the sum of One Million Three Hundred Thousand Dollars and No Cents ($1,300,000.00), which includes attorneys fees and costs, We, Tracie Harris and William Harris, hereby fully waive and forever release and discharge, on behalf of ourselves, our heirs, executors, attorneys, administrators, and assigns, any and all claims, demands, causes of action, damages, losses, compensation, and expenses that we may have, or that may later accrue, against Jeffrey P. Wik, Allison B. Wik, Universal Property & Casualty Insurance Company, State Farm Insurance Company, the Insureds of Universal Property & Casualty Insurance Company & State Farm Insurance Company, Faberware, and Lifetime Hoan Corporation and any other person or entity involved in the sale or manufacture of the fondue pot and burner that caused the injuries in this case, as well as their parent corporations, subsidiaries, affiliated & related companies, their owners, representatives, officers, directors, attorneys, agents, employees, successors and assigns, as a result of an incident that occurred on or around November 17, 2012 at or around 4310 N. Highway A1A, Apt. 1201, Ft. Pierce, FL 34949-8377. Additionally, any and all claims, liens, and/or subrogation interests of any form or nature which now exist or which may be asserted in the future against the subject settlement proceeds will be satisfied by Tracie Harris and William Harris out of the subject settlement proceeds. Specifically, included in this waiver and release are any and all claims brought or which could have been brought against Jeffrey P. Wik, Allison B. Wik, Universal Property & Casualty Insurance Company, State Farm Insurance Company, the Insureds of Universal Property & Casualty Insurance Company & State Farm Insurance Company, Faberware, and Lifetime Hoan Corporation and any other person or entity involved in the sale or manufacture of the fondue pot and burner that caused the injuries in this case, in any federal or state courts through the date of this Release, as a result of the above

EXHIBIT
B

referenced incident.

This release shall be deemed to include any and all claims, including any claims which are or could have arisen under the above policy concerning the above referenced claim, including any and all claims for unfair settlement practices, unfair trade practices, bad faith claims, or any other matter arising under Florida Statute 624.155.

We acknowledge that this is a resolution of a disputed claim, and not an admission of any liability on the part of Jeffrey P. Wik, Allison B. Wik, Universal Property & Casualty Insurance Company, State Farm Insurance Company, and/or the Insureds of Universal Property & Casualty Insurance Company & State Farm Insurance Company.

We agree not to institute any further action and to withdraw any administrative or other proceedings. We represent and warrant that no other person has initiated or will initiate such administrative proceedings or lawsuits on my behalf as a result of the actions or omissions occurring through this date.

We understand and acknowledge that this is a legally binding release and that by signing this release we are hereafter barred from instituting any lawsuits or administrative claims on our behalf regarding the above listed incident through the date of this release.  This includes the filing of any unfair settlement claims practices, bad faith claims or similar claims pursuant to Florida Statute 624.155. We also understand and agree that we had the right to have an attorney represent us in this matter, have retained an attorney, and have consulted with said attorney regarding this release. We also understand and acknowledge that the only consideration for our signing this release is that specified above, and that there is no other agreement or promise of any kind made to us which shall cause us to sign this release. Finally, we fully understand and acknowledge the final and binding effect of this document

This release shall not in any way be construed as an admission by Jeffrey P. Wik, Allison B. Wik, Universal Property & Casualty Insurance Company, State Farm Insurance Company, and/or the Insureds of Universal Property & Casualty Insurance Company & State Farm Insurance Company of any liability or acts of wrongdoing, including failure to timely pay any claim or any deficiency in its settlement claims practices.

We understand and agree that Universal Property & Casualty Insurance Company & State Farm Insurance Company possess and retain the right to pursue any claims, including claims for indemnity, contribution, and subrogation, against Faberware, Lifetime Hoan Corporation, and any other person or entity involved in the sale or manufacture of the fondue pot and burner that caused the injuries in this case.

**WE, THE UNDERSIGNED, HAVE READ THE FOREGOING RELEASE AND FULLY UNDERSTAND.**

_Tracie Harris_
Tracie Harris

JAIME ORTIZ
Notary Public - State of Florida
My Comm. Expires Jun 1, 2014
Commission # DD 979641
Bonded Through National Notary Assn.

STATE OF FLORIDA        )
                        ) SS:
COUNTY OF               )

On the 8th day of _May_, 2013, before me personally appeared TRACIE HARRIS, to me known to be the person named herein and who executed the foregoing Release and she acknowledged to me that he voluntarily executed the same.

Notary Public

My Commission Expires: _June 1, 2014_

_____
William Harris

STATE OF FLORIDA          )
                          ) SS:
COUNTY OF _st Lucié_      )

On the _8th_ day of _May_, 2013, before me personally appeared

William Harris, to me known to be the person named herein and who executed the foregoing

Release and he acknowledged to me that he voluntarily executed the same.

_____
Notary Public

My Commission Expires: _June 1 2014_