UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-14333-CIV-ROSENBERG/LYNCH

UNIVERSAL PROPERTY & CASUALTY INS. CO., as subrogee of TRACIE HARRIS,

Plaintiff,

v.

LIFETIME BRANDS, INC. AND WM BARR CO.,

Defendants.
______________________________________/

FILED by ___ D.C.
MAR - 8 2016
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (DE 35 & 36) and DEFENDANT LIFETIME'S MOTION TO STAY DISCOVERY (DE 44)**

**THIS CAUSE** comes before this Court upon an Order of Reference (DE 46) of the above Motions. Having reviewed the Motions, their respective responsive pleadings, and supplemental authority, this Court recommends as follows:

**BACKGROUND**

1. Mr. and Mrs. Wik invited Mr. and Mrs. Harris over to their home for a fondue dinner party. Mr. Wik lit the fondue pot. At some point a flame erupted from the fondue pot and severely injured Mrs. Harris. This Court assumes for present purposes that the Wiks owned the fondue pot and that the fondue pot was part of the Wik household. The Wiks filed a claim against their homeowner's insurance policy, issued by Universal Property & Casualty Ins. Co. and State Farm. Those two insurers

paid that claim. Insurer State Farm paid the Harrises $1 million. Insurer Universal paid $303,000 to the Harrises. That sum represents the full policy limit plus a $3,000 medical payment. In return the Harrises executed a General Release in the insurers' favor.

2. Attached to the Amended Complaint (DE 31) is the homeowner's insurance policy that the Wiks had with Universal and which was in effect at the time of the injury on November 17, 2012. Also attached is the General Release by which Mr. and Mrs. Harris released all of their claims against the Wiks, Universal, State Farm, Defendant Lifetime Brands, Inc. (including its Faberware brand), and "any other person or entity involved in the sale or manufacture of the fondue pot and burner that caused the injuries in this case".

3. The cause of action that underlies the present Amended Complaint is one of strict products liability. The allegation is that Defendant Lifetime negligently manufactured and designed the fondue pot and made use of denatured alcohol in a way that caused the pot to produce high flames that went beyond the intended cooking surface and caused a fireball. It is further alleged that the fuel that was used to heat the fondue pot, the denatured alcohol, is a component part of the fondue pot. Regarding the maker of the fuel, Defendant Barr, it is further

alleged that it gave inadequate warning of the fuel's flammable and explosive nature.

4. Although it was Mrs. Harris who was injured by the product, it is the insurer, Universal, who is suing the manufacturers. It does so as the Harrises' subrogee. Universal asserts the right of subrogation to sue the Defendants for their alleged negligence. In its Amended Complaint Universal asserts "primary subrogation rights to pursue the actual tortfeasors responsible for the subject fire incident which injured Ms. Harris, i.e., [Defendants Lifetime Brands, Inc., and Wm Barr Co.], through both contractual/conventional subrogation and equitable subrogation." Universal seeks to recover from the Defendants the $303,000 that it paid to Mrs. Harris for her injuries.

**DISCUSSION**

5. This Court begins with the Defendants' primary argument for dismissal. They challenge Universal's exercise of subrogation. This Court has considered the parties' various arguments concerning the subrogation dispute and has read the case law that the parties cite. This Court analyzes the parties' cited case law below. This Court then concludes by finding no legal bar that prevents Universal, as subrogee, from asserting the two products liability causes of action.

6. The Defendants assert the general rule that a tort victim may not assign his or her tort cause of action to a third party. Only the tort victim, and not a third party assignee, may sue a tortfeasor for personal injury. See generally, Casino Cruises, infra, at 1287. The tort cause of action at issue here is one of strict products liability. The Defendants argue that that cause of action belongs to the Harrises and that the Harrises may not assign it to a third party, such as Universal. Consequently Universal may not sue them for that tort, the Defendants conclude. The Defendants' argument fails because Universal is not seeking to do so based on the right of assignment. Universal does not proceed as assignee but rather as subrogee.

7. Universal asserts the cause of action based on the right of subrogation. While in practical effect the two may produce the same result---allowing a third party to substitute for the victim---the doctrine of subrogation is different than that of assignment. See Cont'l Cas. Co. v. Ryan Inc. Eastern, 974 So.2d 368 (Fla. 2008). Subrogation is an equitable doctrine that applies when the third party feels that it must---or should---act on the victim's behalf. It allows the third party to cover the victim without extinguishing the cause of action. Subrogation therefore serves the additional purpose of not

allowing the wrongdoer to escape liability simply because the victim has been compensated. Subrogation provides the means by which a third party may act on the victim's behalf without the wrongdoer benefitting from an otherwise unjust windfall. See Hough v. Huffman, 555 So.2d 942 (Fla. 5th DCA 1990).

8. The doctrine of subrogation permits the involvement of a third party insurer and permits the realignment of interests that insurance compensation brings about. See Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702 (Fla. 1980). Universal, acting in its role as the homeowner's insurance policy insurer, provided compensation for Mrs. Harris's injuries. The doctrine of subrogation provides the means by which it, as the insurer, may honor its insurance obligations; compensate the victim; and substitute itself as the tort "plaintiff" in order to hold the Defendants, the alleged tortfeasors, liable. See West Am. Ins. Co. v. Yellow Cab Co., 495 So.2d 204 (Fla. 5th DCA 1986). Mrs. Harris did not simply assign her tort away to some wholly unaffiliated third party to litigate in her place. As the interceding insurer, the transfer of the cause of action to Universal does not invoke the same public concerns about champerty that the bar against the assignment of personal injury torts guards against. Allowing Universal to substitute itself for the Harrises after paying the

homeowner's insurance policy claim does not monetize Mrs. Harris's injury or generate unnecessary litigation. To the contrary, the doctrine of subrogation provides the equitable remedy where the application of that bar would produce an unjust result. See DeCespedes v. Prudence Mut. Cas. Co. of Chicago, Ill., 193 So.2d 224 (Fla. 3rd DCA 1966).

9. The Defendants argue that the doctrine of equitable subrogation allows Universal to step into the shoes of its insureds---the Wiks---only. The Defendants argue that the Harrises are "third parties" to the insurance contract between Universal and the Wiks and that the doctrine of subrogation does not reach out to include the Harrises. The Defendants' argument fails because none of the cited case law expressly limits the doctrine of subrogation to the insurance contract parties in such a narrow way. Indeed the Defendants' formalistic argument seems contrary to the equitable nature of subrogation and the consideration of the overall acts and relationships of the affected parties.

10. Nor does this Court agree that the Harrises are truly "third parties" to the homeowner's insurance contract. While it may be the Wiks' insurance contract, the Harrises were invited guests and Mrs. Harris was injured while visiting the Wiks at their home. The Harrises therefore have a relationship to the

homeowner's insurance contract. The analogous situation may be one of a motor vehicle liability insurer who, on behalf of its insured driver, compensates a pedestrian that the insured driver hit and injured. While the insurance policy may refer to the Wiks as the "insureds", there remains the possibility that the Harrises count as omnibus insureds or unnamed beneficiaries under the insurance contract or that the homeowner's insurance policy otherwise covers social guests such as the Harrises or injuries such as the one Mrs. Harris allegedly suffered.

11. This Court finds that Universal meets the elements for equitable subrogation. The Eleventh Circuit set out those elements in the case of Nova Info. Sys., Inc. v. Greenwich Ins. Co., 365 F.3d 996, 1005 (11th Cir. 2004). Applying those elements to this case, Nova requires Universal to demonstrate that (1) it paid the Harrises to protect its own interests, (2) it did not act voluntarily, (3) it, itself, is not primarily liable, (4) it fully paid the "debt" owed to the Harrises, and (5) that allowing Universal to assert the products liability cause of action would not work any injustice. If Universal can demonstrate these five elements, then it successfully states a claim of equitable subrogation.

12. The parties focus on the first two elements. The Defendants argue that Universal voluntarily compensated the

Harrises for Mrs. Harris's injury; Universal responds that it paid the claim to avoid being liable for bad faith insurance practice and to comply with its insurance obligations. The case of Boley v. Daniel, 72 So. 644 (Fla. 1916)---a seminal case and a case not cited by the parties---emphasizes the voluntariness caveat that the first two elements reflect. This Court does not see here the kind of voluntary action that this caveat means to exclude, however. Even if the Defendants are correct that Universal had no direct or specific legal obligation to pay the Wiks' claim against their homeowner's insurance policy in the Harrises' favor, Universal still had reasonable and legitimate reasons for why it felt that it must, or should, so act. See Hough, supra, at 944–45 (noting how insurance is a business and not a charity). Hough otherwise generally supports Universal's position that it did not act as a true "volunteer" when it compensated the Harrises. So does the case of Columbia Bank v. Turbeville, 143 So.3d 964 (Fla. 1st DCA 2014) which allowed the bank to proceed as its depositor's subrogee despite the benefit of a state statute that at least partially shielded the bank from liability.

13. The parties do not dispute the third and fourth elements regarding Universal's satisfaction of the outstanding "debt". Nor does this Court see any such shortcoming. Expanding

upon these elements, this Court adds that there is no dispute concerning the legal sufficiency of the General Release that the Harrises executed in Universal's favor or over whether Universal otherwise perfected its right to subrogation. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla. 1999) and U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., 2007 WL 3125065 (M.D.Fla. 2007). Except where addressed below, there is no contention that Universal, as subrogee, is seeking to assert more rights than the Harrises, as subrogors, had. See Nova, supra. Lastly this case does not present the situation where the tort victim released the tortfeasor---and thereby extinguished any right to subrogation. Compare U.S. Fid., supra, and Lincoln Nat'l Health & Cas. Ins. Co. v. Mitsubishi Motor Sales of Am., Inc., 666 So.2d 159 (Fla. 5th DCA 1995).

14. Nor, regarding the final element, do the Defendants say how subrogation prejudices them. The Defendants do not say how subrogation puts them in a worse position. Nor does this Court see any basis for prejudice. As applied here, subrogation allows nothing more than a substitution of the plaintiff-party. The allegation of strict products liability against the Defendants remains the same, whether it is Mrs. Harris or Universal who asserts it.

15. At the same time it is true that none of the parties cite case law directly on point to either the homeowner's insurance context or, with the possible exception of the Casino Cruises case, infra, the products liability context. However this Court finds the case law sufficiently persuasive that Universal enjoys the right of subrogation here in this context. This Court sees no reason why the doctrine of equitable subrogation should not apply to this situation. The doctrine of subrogation, moreover, should be applied liberally as the case of Dantzler Lumber & Export Co. v. Columbia Cas. Co., 156 So. 116, 120 (Fla. 1934)---another seminal case that the parties do cite---stresses: "Our court is committed to a liberal application of the rule of equitable subrogation."

16. The Defendants do cite a few cases that at first blush support their position. Those cases are distinguishable, however, and ultimately are unpersuasive in the circumstances of this case. The Defendants rely on the case of Nat'l Union Fire Ins. Co. v. Salter, 717 So.2d 141 (Fla. 5th DCA 1998), but as the additional cases of Forgione v. Dennis Pirtle Agency, Inc., 701 So.2d 557 (Fla. 1997) and Cowan, Liebowitz & Latman, PC v. Kaplan, 902 So.2d 755 (Fla. 2005) show, the assignability of legal malpractice claims carries its own special public policy concerns. Therefore this Court does not find Salter to apply to

the present insurance context where subrogation generally is consistent with public policy.

17. In some ways the case of Casino Cruises Inv. Co. LC v. Ravens Mfg. Co., 60 F.Supp.2d 1285 (M.D.Fla. 1999) may be the cited case most similar to the instant case. There, a passenger had sued the cruise line for injuries he suffered when he fell in the ship's gangway when exiting the ship. The cruise line's insurer settled the personal injury claim with the passenger in return for an assignment of the passenger's cause of action to sue the gangway's manufacturer. The insurer then sued the gangway's manufacturer. The court applied the bar against the assignment of personal injury claims against the insurer. The Defendants seek to apply this same bar against Universal. This Court finds that ultimately in the end analysis Casino Cruises does not persuade for the same result here. For one Casino Cruises was decided in the admiralty law context, but more importantly the opinion discussed the assignability bar without any mention of subrogation. Moreover, although the court found the assignment to be barred, the court did not foreclose all of the insurer's remedies. The court allowed the insurer to sue the gangway manufacturer under indemnity and contribution causes of action. Because the insurer had alternative means of redress, it may have been that the insurer had no need for the equitable

remedy of subrogation. This Court does not find the Casino Cruises opinion to sufficiently counter the weight of the other equitable subrogation case law that generally allows subrogation in the insurance context.

18. Whereas Casino Cruises makes no mention of the assignment bar, other cases run in the opposite direction. They permit subrogation without any apparent concern about the assignment bar. In the case of Villa Maria Nursing & Rehab. Ctr., Inc. v. So. Broward Hosp. Dist., 8 So.3d 1167 (Fla. 4th DCA 2009), the court allowed the nursing home's insurer to sue a hospital for medical malpractice for the resident's wound injury. In the case of Schwab v. Town of Davie, 492 So.2d 708 (Fla. 4th DCA 1986), the court allowed the insurer to sue the tortfeasor town on the allegation that the town's negligently maintained road caused the victim's death. The Schwab opinion affirmed that "[a]n insurer's right to subrogation does not violate public policy". Id. at 709.

19. Consequently, based on the above case law, this Court sees no general bar against Universal's use of equitable subrogation to bring suit against the Defendants for products liability. Defendant Barr, the maker of the fondue pot's fuel, raises two additional arguments against subrogation. It points out that the General Release that the Harrises executed in

Universal's favor names only Defendant Lifetime Brands, Inc. It does not mention Defendant Barr. Potentially this might undermine Universal's assertion of a contract-based right of subrogation, but this Court finds Universal's alternative assertion of equitable subrogation broad enough to include Defendant Barr. Even if the General Release does not mention Defendant Barr specifically by name or the role of the fuel that it makes, the Harrises still conveyed all of their rights regarding the fondue pot injury. Universal compensated the Harrises for that injury. This Court finds that Universal therefore may sue Defendant Barr for the alleged products liability that Universal says contributed to the fondue pot injury. This Court notes that Universal does not seek the right of subrogation to bring a claim unrelated to the fondue pot and the injury caused by its use.

20. This Court considers next Defendant Barr's argument that the homeowner's insurance policy did not authorize Universal to include in its settlement of the policy limit the supplementary $3,000 medical payment. The Defendant cites Sections I and II---Conditions Paragraph 8 of the policy as stating, "[s]ubrogation does not apply under Section II to Medical Payments to Others or Damages to Property of Others." Defendant Barr argues that this policy term does not entitle

Universal to seek subrogation for the reimbursement of the $3,000 medical payment. (If Defendant Barr is correct in its application of the policy term, the implication is that the contract does authorize Universal to seek subrogation for the $300,000 policy limit that it also paid to the Harrises.) Because this Court finds Universal entitled to equitable subrogation, this argument is moot. The issue before this Court now is whether Universal has subrogee standing, and this Court finds that it meets the requirements of equitable subrogation for such. Whether this policy term prevents Universal from recovering the $3,000 medical payment as part of its damages will have to be determined later.

21. This brings the discussion around to Defendant Lifetime Brands' final argument for dismissal. The focus of both Defendants' Motions to Dismiss is by far the subrogation issue. Defendant Lifetime Brands concludes its Motion to Dismiss with the ancillary argument that Universal fails to state a cause of action of strict products liability. Its brief argument---totaling one page in length---is that Universal's pleading of the cause of action is nothing more than a formulaic recitation of the elements with insufficient facts to show a plausible claim for relief. In its own formulaic way, the Defendant argues that the Amended Complaint falls short of the Twombly and Iqbal

pleading standard. This Court finds the Defendant's argument at least as presently framed insufficient to warrant dismissal. The Defendant does not even say what the elements of a strict products liability cause of action are. The Defendant argues that Universal's allegation is conclusory, but Universal does set forth the basic product flaws. This Court finds that Universal pleads the facts necessary to support its theories of product liability even if it does so at the very minimum. The Defendant cites no legal authority that Universal must plead in any greater specificity how the combined fondue pot and fuel product were negligently designed, made, and labeled than what Universal already does.

22. The Defendants move to dismiss the Amended Complaint under Rule 12(b)(6), Fed.R.Civ.P. That standard requires this Court to accept Universal's well-pled allegations as true and to construe them in a light most favorable to it, which this Court does here. Universal, in turn, must plead such sufficient facts (1) to enable this Court to reasonably infer that the Defendants are liable for the alleged products liability and (2) to render each element of that cause of action plausible. <u>See generally</u>, <u>Franza v. Royal Caribbean Cruises, Ltd.</u>, 772 F.3d 1225 (11th Cir. 2014). As for whether Universal adequately pleads a strict products liability cause of action, this Court finds Defendant

Lifetime Brands, Inc., limited argument insufficient to warrant dismissal for the failure to state the cause of action. The Franza case also shows that a Rule 12(b)(6) review can involve whether there is a dispositive legal issue that precludes relief. The legal issue in dispute here is the right to subrogation. This Court finds that Universal adequately pleads its claim to equitable subrogation and that it may press its two strict products liability counts as subrogee.

## CONCLUSION

23. The Defendants argue for a very narrow application of the doctrine of subrogation, one that essentially tracks the doctrine of assignment and indeed is subject to the public policy bar against the assignment of personal injury claims. However this Court does not find their position consistent with the cited case law. Applying the underlying facts and circumstances to the cited case law, this Court finds Universal to be entitled to bring this lawsuit as the Harrises' subrogee. Regardless of whether Universal has a contractual right to subrogation, it meets the requirements of equitable subrogation. Universal had a relationship to the contracting insureds, the Wiks, as well as to the Harrises, their guests, by virtue of the homeowner's insurance policy, and it acted in a way that it deemed fit as the involved insurer. This Court sees no legal bar

that prevents Universal now from stepping into the Harrises shoes to bring the products liability causes of action against the Defendants. Whether Universal actually can prove products liability negligence has yet to be determined, but for now this Court finds that Universal at least has standing to bring the causes of action.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendants' Motions to Dismiss (DE 35 & 36) be **DENIED**. As such this Court recommends that Defendant Lifetime Brands' Motion to Stay Discovery (DE 44) be **DENIED** as moot.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case. Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 749–50 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 8th day of March, 2016.

FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: Hon. Robin L. Rosenberg
Brian P. Henry, Esq.
Jon J. Hernan, Esq.
Ian S. Ronderos, Esq.